Robert Heieck, (AZ Bar No. 033735)
**DC Capital Law, LLP**
700 12th Street NW, Ste 700
Washington, D.C. 20005
202-793-4433
rheieck@dccapitallaw.com
*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gregory Redfern, | Case No: |
| Plaintiffs, | **COMPLAINT** |
| v. | |
| Diamond Resorts Management, Inc. | **(JURY DEMAND)** |
| Defendants. | |

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY

NOW COMES Plaintiff, GREGORY REDFERN, ("Redfern" or "Plaintiff") by and through

counsel, DC CAPITAL LAW, LLP, and brings this action against the above listed Defendant,

DIAMOND RESORTS MANAGEMENT, INC. ("Defendant" or "DRM") on the grounds set forth

herein:

## I. INTRODUCTION

1. This is an action by a consumer alleging damages for Defendant's violations of the Fair Debt

Collections Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, which prohibits debt collectors from

engaging in abusive, deceptive, and unfair collection practices.

2. Defendant has crafted a collection communication letter that avoids the regulation of the debt

collection activities of Defendant by eliminating the notice to the consumer of their federal validation

and verification dispute rights under 15 U.S.C. §§ 1692g(a)(1) through (5), as well as, the consumer's right to have collection efforts cease under 15 U.S.C. § 1692g(b).

3.  Defendant has crafted a "FINAL NOTICE" collection letter that seeks to collect defaulted debt on behalf of a homeowner's association pursuant to 15 U.S.C. § 1692g. This "FINAL NOTICE" threatens public liens, foreclosure proceedings, additional collection costs and legal fees, and adverse effects to the consumer's credit rating if the debt remains unpaid to Defendant, where the amount of such debt is neither explained, detailed, nor legally or contractually justified to the consumer, in violation of 15 U.S.C. § 1692e.

4.  When it enacted the FDCPA, Congress found there to be abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Two of Congress' stated purposes in enacting the FDCPA were to eliminate abusive and deceptive debt collection practices by debt collectors, and to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.

## II. JURISDICTION

5.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and the FDCPA, 15 U.S.C. § 1692k(d).

6.  Venue is proper in the District of Arizona under 28 U.S.C. § 1391(b), where the acts giving rise to Plaintiff's action occurred in this district and where Defendant transacts business in this district.

## III.  PARTIES

7.  Plaintiff Redfern is a natural person who resides in Grants Pass, OR. Plaintiff is a consumer within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(3).

8.  Defendant DRM is an Arizona domestic for-profit (business) corporation, AZ entity ID 02376594, the principal purpose of whose business is the collection of consumer debts. Defendant DRM's statutory agent is National Registered Agents Inc, located at 3800 N. Central Ave., Suite 460, Phoenix, AZ 85012.

## IV. RELEVANT STATUTES AND CASE LAW APPLICATION

9.    The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy.

10. Congress enacted the FDCPA for the following purposes: to protect consumers from a host of unfair, harassing, and deceptive debt collection practices; to eliminate abusive debt collection practices by debt collectors; to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged; and to promote consistent State action to protect consumers against debt collection abuses. To advance these purposes, the FDCPA codified several specific consumer-protective rights, including, but not limited to, those in 15 U.S.C. § 1692e and § 1692g.

11. 15 U.S.C. § 1692g furthers the purpose of protecting consumers from abusive debt collection practices by requiring a debt collector who solicits payment form a consumer to provide that consumer with a detailed validation notice, which allows a consumer to confirm that she owes the debt sought by the collector before paying it. That is, § 1692g aims to provide the consumer a period of time to consider her options.

12. Significantly, the FDCPA gives consumers a private right of action to enforce its provisions against debt collectors. 15 U.S.C. § 1692k(a).

13. The FDCPA is a "broad remedial statute," *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011), and must be liberally construed in favor of the consumer in order to effectuate this goal of eliminating abuse. *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1168 (9th Cir. 2006).

14. To state a claim under FDCPA, the Plaintiff must allege in her complaint: (1) the Plaintiff has been the object of collection activity arising from consumer debt; (2) the Defendant is a debt collector as

defined by the FDCPA; and (3) the Defendant has engaged in an act or omission prohibited by the FDCPA.

15. "The clear language of the statute explicitly requires that a debtor shall be given notice that he may 'dispute the validity of the debt, or any portion thereof....' 15 U.S.C. § 1692g(a)(3)." *Baker v. G.C. Services Corp.*, 677 F.2d 775, 778 (9th Cir. 1982).

16. "[F]ailing to explicitly inform the debtor that any portion of the debt may be disputed is a violation of the FDCPA." *McCabe v. Crawford & Co*., 272 F.2d 736, 744 (N.D. Ill. 2003).

17. The FDCPA requires debt collectors to send consumers a written validation notice "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt." *See* 15 U.S.C. § 1692g(a). The validation notice must inform consumers that, among other things, the debt collector will verify the debt if the consumer disputes it in writing and that, upon the consumer's written request, the debt collector will provide the name and address of the original creditor.

18. Under the FDCPA, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a (5). Assessments for Condominium and Homeowners' Associations, such as the Owners' Association here, on property acquired for personal, family, or household purposes are FDCPA debts. *See Newman v. Boehm, Pearlstein & Bright*, 119 F.3d 477 (7th Cir. 1997).

19. The FDCPA "defin[es] the term 'debt collector' to embrace anyone who 'regularly collects or attempts to collect…debts owed or due…another.'" *Henson v. Santander Consumer USA Inc*., 137 S. Ct. 1718, 1721 (2017) (citing 15 U.S.C. § 1692a (6)) (alterations in original). *McNair v. Maxwell & Morgan PC*, No. 15-17383 (9th Cir. 2018).

20. Defendant DRM is a debt collector collecting debts due or owed another as part of the one and only initial contact of consumers in a "FINAL NOTICE" communication that seeks to scare Plaintiff

into paying a debt that is undisputed or proven without providing the right of validation and verification under the FDCPA.

21. An FDCPA plaintiff need not even have actually been misled or deceived by the debt collector's representation; instead, liability depends on whether the hypothetical "least sophisticated debtor" likely would be misled. *See e.g. Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 & n.2 (9th Cir. 2011); *Terran v. Kaplan*, 109 F.3d 1428, 1431 (9th Cir. 1997). This inquiry is objective and is undertaken as a matter of law. *Gonzales*, 660 F.3d at 1061. *Tourgeman v. Collins Financial Servs., Inc.* 755 F.3d 1109, 1119 (9th Cir. 2014).

22. To prohibit deceptive practices, the FDCPA outlaws the use of false, deceptive, and misleading collection letters and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. See 15 U.S.C. § 1692e. Among these *per se* violations prohibited by that section are: ***false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2)(A)***; and ***the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e (10)***. (emphasis added).

23. Defendant DRM, through the "**FINAL NOTICE**" letters like **<u>Exhibit 1</u>** to the purchaser of the timeshares of condos and resorts, regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed.

24. The "**FINAL NOTICE**" letters sent by Defendant DRM, as a debt collector on behalf of a homeowners association are the initial and only letters consumers, like Plaintiff, receive after their Owners Association debt goes into **Default**. Defendant DRM threatens foreclosure, collection and legal fees, filing of a lien, and adverse credit consequences if an unexplained and undisputed amount of debt is not paid within 15 days of the date of the letter being sent, while failing to provide the mandatory § 1692g Validation and Verification dispute language in the initial letters.

## V. FACTUAL ALLEGATIONS

25. On or around January 18, 1998, Plaintiff purchased a timeshare interest at The Ridge on Sedona Golf Resort Condominium ("resort") from All Seasons Resorts, Inc., which was eventually acquired by Diamond Resorts International, Inc. As part of its purchase of the timeshare interest, Plaintiff incurred a financial obligation comprising of annual assessments to the resort's association.

26. The resort is located in Yavapai County, State of Arizona.

27. Plaintiff was unable to pay his 2018 annual assessment due to The Ridge on Sedona Golf Resort Owners Association ("Association") on January 1, 2018.

28. Plaintiff's purchased the timeshare interest for personal, family, or household purposes. Assessments for condominium and homeowners' associations on property acquired for personal, family, or household purposes are FDCPA debts. *Newman v. Boehm, Pearlstein & Bright*, 119 F.3d 477 (7th Cir. 1997).

29. Upon non-payment on January 12, 2018, the outstanding assessment was considered delinquent. ***See The Ridge on Sedona Golf Resort Owners Association 2018 Assessment Billing and Collection Policy* (hereinafter, "2018 ABC Policy" or "Exhibit 2").**

30. As of February 15, 2018, the outstanding assessment was considered in default. ***See Exhibit 1.***

31. By correspondence dated April 16, 2018, which was sent directly to Plaintiff, Defendant DRM attempted to collect a debt, "on behalf of The Ridge on Sedona Golf Resort Owners Association," in the amount of $454.29. ***See Exhibit 1.***

32. Exhibit 1 was the initial communication from Defendant DRM to Plaintiff regarding his alleged debt to the Association.

33. Exhibit 1 is a form letter that Defendant DRM uses as its initial written communication and regularly sends to consumers to solicit payment of defaulted assessments.

34. In the FINAL NOTICE, Defendant DRM failed to provide the required disclosures regarding Plaintiff's statutorily protected rights to dispute the debt and seek verification thereof pursuant to 15

U.S.C. § 1692g. Additionally, Defendant DRM failed to properly identify an address to which Plaintiff could have sent a notice of dispute or request for verification.

35. As the FINAL NOTICE stated: "No further notice will be sent." *See Exhibit 1.* In fact, Defendant DRM did not send any additional communications to Plaintiff.

36. On September 18, 2018, Plaintiff's attorney sent a Debt Validation Request to Defendant DRM counsel seeking verification and validation of the alleged $454.20 owed by Plaintiff to Defendant. *See Exhibit 7.* Plaintiff's attorney also raised the absence of the mandatory § 1692g language, inviting Defendant DRM to correct the deficiency.

37. Nearly four months later, on January 3, 2019, a different and separate entity from Defendant DRM attempted to validate the alleged debt pursuant to the FDCPA. *See Exhibit 8.* That entity was Diamond Resorts Financial Services ("DRFS"). *Id*. However, this attempted validation did not show why $454.20 was owed or how Defendant DRM calculated that amount. The different and separate entity, DRFS, merely provided a printout showing Plaintiff owing $791.46.

38. The attempted validation also does not demonstrate any contractual or legal basis authorizing the charging of collection fees on Plaintiff, rendering such fees unlawful under 15 U.S.C. §§ 1692e and 1692f. *See Exhibit 8.*

39. It is the standard policy of Defendant to use false, deceptive, or misleading representations or means in connection with the collection of any debt.

40. Defendant's FINAL NOTICE at Exhibit 1 is completely devoid of the mandatory FDCPA § 1692g dispute and verification notices. It is the standard policy of Defendant to omit the statutorily required § 1692g language on Defendant's FINAL NOTICE sent to consumers. Defendant omits the § 1692g language in order: to prevent the assumption of validity of the purported debt; to provide Plaintiff the opportunity to dispute the debt; to provide Plaintiff the opportunity to seek verification of the debt; and to cease its collection activity on consumers like Plaintiff until Defendant provides verification of the debt.

41. Defendant's use of its form letter, represented by Exhibit 1, eliminates the Plaintiff's statutory rights to dispute the debt, to seek verification of the debt, and for collection activity to cease until Defendant provides verification of the debt.

42. By failing to tell Plaintiff that a request for verification must be made "in writing" (as required by § 1692g(a)(4), in order to receive verification, Defendant failed to communicate information to Plaintiff that is required by the FDCPA. The failure to communicate such information could have a serious effect on a consumer such as Plaintiff because he would not know that only a written dispute would require Defendant both 1) to send verification and 2) to cease collection efforts in line with § 1692g(b). As most individual consumers are unaware of their rights under the FDCPA—*see Schwarm v. Craighead*, 233 F.R.D. 655, 664 (E.D. Cal. 2006); *see also Acik v. I.C. System, Inc*., 251 F.R.D. 332, 337 (N.D. Ill. 2008)—Defendant's omission of the § 1692g language from its FINAL NOTICES would cause Plaintiff to unintentionally waive his rights under § 1692g.

## VI.  DEFENDANT DRM IS A DEBT COLLECTOR UNDER § 1692a(6)

43. A "debt collector" is any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose for which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692a(6).

44. Defendant DRM mailed the FINAL NOTICE directly to Plaintiff in an attempt to collect a debt owed to the Association. Exhibit 1 demonstrates that Defendant DRM was collecting or attempting to collect a attempt "on behalf of The Ridge on Sedona Golf Resort Owners Association."

45. Defendant DRM was not attempting to collect a debt pursuant to a management agreement.

46. According to The Ridge on Sedona Golf Resort Owners Association's Financial Report of December 31, 2014, the property and affairs of the Association were managed by Defendant DRM. ***See Exhibit 3, note 4, "Management Agreement," designating Defendant DRM as "the Management Company."***

8

47. However, according to The Ridge on Sedona Golf Resort Owners Association's Financial Report of December 31, 2015, Defendant DRM was no longer the Management Company. Instead, Diamond Resorts Ridge on Sedona Development, LLC was the Management Company. ***See Exhibit 4, note 4, "Management Agreement."***

48. Furthermore, The Ridge on Sedona Golf Resort Owners Association's Financial Report of December 31, 2016 also identified Diamond Resorts Ridge on Sedona Development, LLC as the Management Company, without any mention of Defendant DRM. ***See Exhibit 5, note 4, "Management Agreement."***

49. Finally, The Ridge on Sedona Golf Resort Owners Association's Financial Report of December 31, 2017 once more identified Diamond Resorts Ridge on Sedona Development, LLC as the Management Company, without any mention of Defendant DRM. ***See Exhibit 6, note 4, "Management Agreement."*** Note 4 of Exhibit 6 also expressly states: "The agreement is automatically renewed for a period of one year unless terminated under provisions of the agreement. The current term expires in December 2018."

50. On information and belief, Defendant DRM and Diamond Resorts Ridge on Sedona Development, LLC are different companies.

51. Thus, Defendant DRM was not the Management Company managing the property and affairs of the Association under a Management Agreement in 2018, when Defendant DRM attempted to collect the debt in the FINAL NOTICE Defendant sent to Plaintiff.

52. Accordingly, in 2018, Defendant DRM's was a debt collector under § 1692a(6) when it used the mail to send a FINAL NOTICE directly to Plaintiff in an attempt to collect a debt owed to the Association.

## VII. LAWS CONCERNING 15 U.S.C. § 1692g

53.  The FDCPA, 15 U.S.C § 1692g provides that:

**§ 1692g. Validation of debts:**

9

(a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

(b) Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, ***the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment***, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. (emphasis added).

54. As a response to "the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid," S.Rep. No. 95-382, at 4 (1977), as

10

reprinted in 1977 U.S.C.C.A.N. 1695, 1699, the FDCPA gives the consumer the right to dispute a debt claimed by a debt collector, and to seek verification of the validity of the debt. 15 U.S.C. § 1692g(b). *Jacobson v. Healthcare Financial Services, Inc.*, 434 F. Supp. 2d 133 (E.D.N.Y 2006). Section 1692g(a)(3) requires the validation notice to state that the debtor may dispute the debt "within thirty days after receipt of the notice" (emphasis added). *Jacobson at 93*.

55. Subsection (a)(4) states that if the debtor disputes the debt in writing within thirty days, the debt collector must obtain verification of the debt and must send the debtor a copy of the verification. Subsection (a)(5) states that, if the debtor makes a written request, the debt collector must provide the name and address of the original creditor. Subsection (b) states that if the debtor disputes the debt in writing within thirty days, the debt collector must cease collection efforts until the debt collector has verified the debt. *Graziano v. Harrison, 950 F. 2d 107 - Court of Appeals, 3rd Circuit 1991*.

56. The FDCPA's bona fide error defense at 15 U.S.C. § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of a legal requirement of the FDCPA. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, 1611-12 (2010). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983).

57. The Defendant's intent is to avoid the costs and expenses of following the regulations of the FDCPA and avoid consumers increasing the expenses of collection by eliminating rights a consumer like Plaintiff has to seek validation and verification of the debt.

58. Because of Defendant DRM's intent to avoid the FDCPA, the Defendant's collection attempts are made to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices used by Defendant that violate 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692g(a) and 15 U.S.C. § 1692(b).

59. Knowledge of these rights is vital to protecting consumers' abilities to exercise them. See *Consumer Information: Hearings Before the Subcomm. on Consumer Affairs of the H. Comm. on Banking, Fin., and Urban Affairs*, 95th Cong. 212 (1977) (statement of Christian S. White, Assistant Dir. Spec. Stats., F.T.C.) ("[C]onsumers cannot be expected to exercise rights they are ignorant of."). Therefore, as a safeguard, § 1692g of the FDCPA requires collectors to inform debtors of their rights under the FDCPA via a written notice within five days of initial communication. *Manner of Debtor's Dispute Under the FDCPA is in Dispute,* Laura Atack, 48 Wash. U. J. L. & Pol'y 263 (2015), available at http://openscholarship.wustl.edu/law_journal_law_policy/vol48/iss1/14.

60. The acts and omissions of Defendant DRM occurred in connection with efforts to collect the alleged Association debts from Plaintiff and through DRM's FINAL NOTICE were done intentionally and willfully and to avoid the regulations and mandates of the FDCPA and avoid the costs and expense of having to respond to validation and verification disputes from consumers as third-party debt collectors.

61. Plaintiff never received any more communications from Defendants five or more days later advising them of the mandatory Validation and Verification rights under the FDCPA.

62. 15 U.S.C. § 1692g(a)(4) and (a)(5) require that the debt collector, like the Defendant, must notify a consumer, like the Plaintiff, that he can seek verification or validation of the disputed the debt and that the verification and validation must be requested *in writing*. This notice of validation and verification under the FDCPA must be provided to the consumer within five days of the initial contact by the debt collector under 15 U.S.C. § 1692g(a).

63. **In violation of the FDCPA** through its FINAL NOTICE, Defendant DRM failed to inform Plaintiff of his Federal right to validate and verify a disputed debt ***in writing*** when obtaining verification and validation under 15 U.S.C. § 1692g(a)(4) and (a)(5). (emphasis added).

64. **In violation of the FDCPA**, Defendant DRM required Plaintiff to pay a debt while threatening a public lien for the amount owed, foreclosure, collection and attorney costs, and adverse credit trade lines

after receiving a "**FINAL NOTICE,"** and the letter is written purposely to avoid any written dispute to waive the Plaintiff's right to seek verification by failing to make the request in writing, as required by the FDCPA. *Miller v.Payco-General American Credits, Inc.*, supra, 943 F.2d 482 (4th Cir. 1991); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. 1990); *Flowers v. Accelerated Bureau of Collections*, 96 C 4003, 1997 U.S.Dist. LEXIS 3354, 1997 WL 136313 (N.D.Ill. Mar 19, 1997). Contra, *Terran v. Kaplan*, supra. "A consumer calling the defendant would not be exercising her validation rights and would not be entitled to the statutory cessation of debt collection activities." *Gaetano v. Payco of Wisconsin, Inc.*, 774 F. Supp. 1404, 1412 (D. Conn. 1990).

65. Under the FDCPA, notice of the thirty-day validation period is necessary, but not sufficient to satisfy § 1692g(a). A debt collector must "effectively convey" the notice to the consumer *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir.1988).

66. By hiding the fact that the consumer's dispute and verification must be in writing, the letter is crafted to also eliminate Plaintiff's right to have a debt collector cease collection activities under Subsection (b) which states:

**§ 1692g (b) Disputed debts**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor*, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment*, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. (emphasis added).

67. By having the consumer not seek verification in writing, Defendant DRM can continue to collect on the debt and avoid the delay and expense of having to follow the law under 15 U.S.C. § 1692g(a)(4) and (a)(5) and then create a public lien and foreclosure with accompanying credit damage that is made available to the public for an amount that is undisputed and false in violation of the FDCPA. Defendant also gets to bill the unwary

1 consumer for extra collection and lawyer fees that would not be owed had the Defendant

2 followed the FDCPA.

3     68. The Defendant's unlawful scheme and plan is circular in that the Plaintiffs suffer an injury in fact

4 with the unlawful assessment for further and additional collection costs and lawyer fees, a public lien,

5 foreclosure and adverse credit histories on the debt without the mandatory right to dispute it and prevent

6 damage to their credit reports caused by a confusing collection letter—the FINAL NOTICE--that hides

7 the very protections the FDCPA is founded upon: The right to dispute and seek validation of the debt

8 under 15 U.S.C. § 1692g(a) and 15 U.S.C. § 1692g(b).

9     69. The right to dispute and seek validation of the debt under 15 U.S.C. § 1692g(a) and 15 U.S.C.

10 Sec. 1692g(b) is granted to the Arizona consumer 30 days from the date of the receipt of the initial debt

11 collection communication. Here, Defendant granted the Plaintiff 15 days to remedy the default from the

12 date of the letter.

13     70. By specifying that the debt must be disputed within thirty days from the date of receipt of the

14 notice, Congress has consciously protected against abusive tactics of debt collectors, such as the

15 backdating of notices or other practices that might shorten consumers' time to respond. *Cavallaro v.*

16 *Law Office of Shapiro & Kreisman*, 933 F. Supp. 1148 (E.D.N.Y. 1996)

17

18     71. The acts and omissions of Defendant done in connection with efforts to collect the alleged debts

19 from Plaintiff were done intentionally and willfully in violation of the FDCPA.

20 

**VIII.  <u>CAUSES OF ACTION</u>**

21     **COUNT 1: Defendant violated § 1692g.**

22     72. Plaintiff realleges and incorporates by reference the allegations in the paragraphs 1-71 of this

23 Complaint as if fully set forth herein.

24     73. Plaintiff is and has been, at all times relevant to this complaint, a natural person and a consumer.

25

26

14

74. Plaintiff purchased a timeshare interest for personal, family, or household use. Assessments for condominium and homeowners' associations on property acquired for personal, family, or household purposes are FDCPA debts.

75. Defendant is and has been, at all times relevant to this Complaint, a debt collector. Defendant collects or attempts to collect defaulted assessments for the Association, which are consumer debts arising out of transactions for personal, family, or household use.

76. Defendant sent a written communication—a FINAL NOTICE—through the mail directly to Plaintiff at his home address.

77. Defendant's written communication, called a FINAL NOTICE, violated §§ 1692g(a)(4) and (5) when each FINAL NOTICE failed to properly disclose to the Plaintiff his rights to dispute the defaulted debt and to seek verification of the defaulted debt. Defendant never validated the defaulted debts of Plaintiff.

78. Defendant's violations of the FDCPA, 15 U.S.C. § 1692g include, but are not limited to:

    a.  Failing to inform the Plaintiff that a dispute of any portion of the debt would prevent Defendant from assuming the debt valid, in violation of § 1692g(a)(3);

    b.  Failing to inform the Plaintiff that his request for verification of the alleged debt must be "in writing" in violation of § 1692g(a)(4);

    c.  Failing to include the mandatory dispute and validation notices to Plaintiff in Defendant's initial 1692g collection letter, the FINAL NOTICE, to prevent Plaintiff from seeking proof of the debt in writing, thereby stopping further collection efforts.

79. Defendant DRM's FINAL NOTICE presents a risk of real harm to the FDCPA's goal of ensuring consumers like Plaintiff is free from abusive debt collection practices because the FINAL NOTICE failed to provide Plaintiff the mandatory § 1692g language about the manner in which Plaintiff could exercise his statutory right to obtain verification of the debt.

80. Defendant DRM's omission of the § 1692g language would cause the least-sophisticated consumer to understand, incorrectly, that he or she could not dispute or seek verification of the debt allegedly owed. Such omission would further cause the least-sophisticated consumer to unintentionally waive or otherwise not properly vindicate said rights under the FDCPA.

81. Violation of § 1692g is a concrete injury in and of itself.

82. Failure of Defendant DRM to make the required § 1692g disclosures and state accurately the steps a consumer must take to dispute a debt caused Plaintiff to unintentionally waive his rights to seek verification of the debt, to have Defendant cease collection efforts, and cause a risk of real harm in damaging the Plaintiff by making him pay more than was due.

83. Defendant DRM's omission would also cause the least-sophisticated consumer to waive his right to have a debt collector cease contacting the consumer until the debt collector provided the consumer with verification of the alleged debt, as requested.

84. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to an award of actual damages, statutory damages, costs, and reasonable attorney fees.

**COUNT 2: Defendant violated § 1692e.**

85. Plaintiff realleges and incorporates by reference the allegations in paragraphs 1-52 of this Complaint, as if fully set forth herein.

86. Plaintiff is and has been, at all times relevant to this Complaint, a natural person and a consumer.

87. Plaintiff purchased timeshare interests for personal, family, or household use. Assessments for condominium and homeowners' associations on property acquired for personal, family, or household purposes are FDCPA debts.

88. Defendant is and has been, at all times relevant to this Complaint, a debt collector. Defendant collects or attempts to collect defaulted assessments for the Association, which are consumer debts arising out of transactions for personal, family, or household use.

89. Defendant sent written communications through the mail directly to Plaintiff's home address.

90. Defendant's violations of the FDCPA, 15 U.S.C. § 1692e, include, but are not limited to:

    a.  Failing to provide proper § 1692e(11) disclosures, raising the risk of real harm that Plaintiff may unwittingly disclose sensitive personal information. 15 U.S.C. § 1692e(11) requires a debt collector to inform a consumer in the initial communication with the consumer that "This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." This disclosure is commonly known as the mini-Miranda.  The Mini-Miranda notice is missing from the letters to Plaintiff at in Defendant DRM's FINAL NOTICE;

    b.  Using any false, deceptive, or misleading representation or means in connection with the collection of any debt or to obtain information concerning a consumer in violation of § 1692e and §1692e(10);

    c.  Threatening to place false amounts owed on Plaintiff's credit reports when the amount charged by Defendant is false, illegal and not contractually justified under and in violation of §§ 1692e(5) and 1692e(8).

    d.  Making deceptive and misleading representations regarding the amount of debt allegedly owed when Defendant failed to properly validate the debt, in violation of § 1692e(2)(A)

**WHEREFORE**, Plaintiff seeks judgment against Defendant for:

    a.  Statutory and Actual damages for Plaintiff in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2);

    b.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and;

    c.  Such further relief as the court deems just and proper.

## IX.   JURY DEMAND

Plaintiff hereby demands this case be tried before a jury.

/ / /

1

**RESPECTFULLY SUBMITTED** this 15th day of April, 2019.

2

3                                  By: */s/ Robert Heieck*_____

4                                  Robert Heieck, Esq.
                                   **DC CAPITAL LAW, LLP**
5                                  700 12th Street NW Ste 700
                                   Washington, D.C. 20005
6                                  202-793-4433
                                   Rheieck@dccapitallaw.com
7                                  *Attorney for Plaintiff*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26